Alpensjo v. Sandvik Materials Technology, Inc.

*Paul Jennings, Kevin P. Foley* and *Michael J. Foley,* for plaintiff.

*Michael J. Ossip, Courtney Wirth Griffin* and *Marianne J. Gilmartin* for defendants.

MINORA, *J.,* February 15, 2013—Swedish born plaintiff, Johan Alpensjo (hereinafter "Alpensjo") moves for partial summary judgment against defendants, Sandvik Materials Technology, Inc. (hereinafter "Sandvik") asserting, in support of his motion, the theory of collateral estoppel based upon a final judgment rendered by a worker's compensation judge. For reasons hereinafter articulated, we sustain plaintiff's motion.

## FACTUAL BACKGROUND

This case arises out of a second amended complaint by Alpensjo alleging Sandvik committed wrongful termination of employment as a violation of public policy in the context of a worker's compensation claim. It also

alleges defamation.

Basic facts in this case are not in significant dispute. Plaintiff is a Swedish national who legally entered into the United States via an E2 work visa. Plaintiff's work visa was facilitated by defendant, Sandvik, his employer, an American subsidiary of Sandvik, Inc. a Swedish company. In 2007, Sandvik provided Alpensjo the requisite employment opportunity and assisted him with the paperwork necessary to secure the E2 work visa. (*See* transcript of record of John Alpensjo Dep. 6-8, Feb. 15, 2010).[1]

According to Alpensjo's deposition (Alpensjo Dep. 11:14-23) plaintiff was promoted in 2008 by Lisa Antignoli as a result of his proficient management of Sandvik's bigger global projects.

At Alpensjo Dep. 13:4-22, plaintiff's supervisor, Lisa Antignoli, wrote an email to the president of Sandvik Materials Technology and others indicating that with regard to Alpensjo she was,

> "...also positioning him (Alpensjo) into the high achiever and high potential category within my department as a potential future department manager."

At Alpensjo Dep. 14:9-25, Lisa Antignoli also wrote a May 21, 2008 email at 4:06 p.m. directed again to the president and others regarding Alpensjo wherein Ms.

---

1. Telephonic deposition of Johan Alpensjo dated February 15, 2010 for worker's compensation claim of Johan Alpensjo. B.C. No. 3443054.

Antignoli stated,

> "…I am proposing to promote a solid member of my department, John Alpensjo…He has come up to the top in my department and exemplified a high level of leadership, initiative and ability to collaborate on a global perspective. I am also positioning him into achiever and high potential category within my department as a potential future department manager. With Bill Coleman gone, John easily steps into this management role."

Other correspondence indicates that HR manager, Brian Spencer, concurs with Lisa Antignoli's assessment of Alpensjo's proven abilities.

On May 22, 2008, president of Sandvik, Peter Frosini, approved a salary increase for Alpensjo. From May 22, 2008 until the date of an automobile accident on December 11, 2008 that left Alpensjo impaired and unable to work, there is no documentary or testimonial evidence suggesting that Sandvik was unhappy with Alpensjo as their employee. (*See* Alpensjo Dep. 26:2-6, 27:20-28:25).

While on a work related automobile trip to Connecticut on December 11, 2008, Alpensjo was involved in an automobile accident wherein he sustained personal injury to his right eye, neck and upper back. (*See* Alpensjo Dep. 29:8-25). The immediate result of the accident left Alpensjo with nausea, light/photo sensitivity, blurred vision, double vision and distorted vision. (*See* Alpensjo

Dep. 30). In addition, Alpensjo also sustained significant headaches.

These conditions left Alpensjo unable to work. Being right eye dominant, his vision issues also left Alpensjo impaired. Sandvik referred Alpensjo to northeast occupational medicine (hereinafter "NEOMED") and also to Bobbi O'Donnell to coordinate treatment. Alpensjo was told that he must use company doctors for diagnosis and treatment. (*See* Alpensjo Dep. 42).

Alpensjo attempted a part-time return to work in late January of 2009 at four hours per day. Due to Alpensjo's eye problems, morning adjustment to daylight was difficult. This caused him to be tardy at traditional work arrival times. He was also told to try to schedule all of his medical needs outside of his four hour window of work.

By the middle of February 2009, Alpensjo was trying to increase his work day to six hours per day. The transition back to work was difficult, and his vision and light problems impaired his ability to read computer screens. Sandvik management was also pressuring Alpensjo to accelerate his return to work. (*See* Alpensjo Dep. 66).

A January 15, 2009 eye exam at northeast eye revealed continued double vision in Alpensjo's right eye as well as light sensitivity.

Alpensjo candidly admits at Alpensjo Dep. 71 that after the accident, despite an attempt to work four hours per day, his pre-accident productivity was reduced and he was

really only performing two hours of real work in the four hour period.

On March 3, 2009, Alpensjo arrived at Sandvik and was told that he was to have an urgent meeting with Lisa Antignoli and Brian Spencer. (*See* Alpensjo Dep. 99:14-21). At that meeting, Alpensjo's employment with Sandvik was terminated. Alpensjo was advised that he had thirty days to leave the country. (*See* Alpensjo Dep. 108:20-25). Alpensjo's visa expiration date was May 21, 2009.

At plaintiff's supplemental brief Exhibit 1, a December 16, 2008 letter from Sentry Insurance to Alpensjo shows a claim was made under the Worker's Compensation Act for a date of loss dated December 11, 2008. The same document at Exhibit 2 shows worker's compensation first report of injury or illness dated December 15, 2008 as the date the administration was notified.

Although Alpensjo's E2 visa had expired on May 21, 2009 and Alpensjo had returned to Sweden, a defendant independent medical examination (hereinafter "IME") was arranged by Sandvik with Dr. Vardie in Philadelphia, Pennsylvania for June 4, 2009. A defense physical examination was also arranged by Sandvik with a Dr. Mauthe for June 8, 2009. Defendant was aware of Alpensjo's absence from the United States since they had terminated his employment and notified Swedish and United States authorities of his E2 work visa expiring.

Whether this scheduling of Alpensjo's physical

examinations for his worker's compensation claim was merely clerical error and oversight or Sandvik's scheme to deny Alpensjo his benefits may be subject to debate. The facts next referenced, however, are not debatable, and are facts that have circumstantial impact.

In the Brian Spencer deposition (transcript of record of Brian Spencer Dep. 158:2-25, Mr. Spencer was asked whether he had written letters to the Swedish Embassy, and the United States Citizenship and Immigration Service in March and April of 2009 and he replied, "That is correct."[2] (See Spencer Dep. 158:9).

Mr. Spencer acknowledged in his deposition that the letters were for two purposes: first, to advise recipients that Sandvik no longer employed Alpensjo, and second, to advise the recipients that due to Alpensjo's loss of employment, he was no longer eligible to remain in the country under the terms of his visa.

At Spencer Dep. 160, Mr. Spencer quotes his letters, "To support your efforts to repatriate him (Alpensjo). See generally Spencer Dep. 155:167).

Another telling piece of evidence is that Sandvik, a Swedish company subsidiary, never made efforts to reschedule Alpensjo's IME's for examination in Sweden by company doctors. This was something well within their capability since defendant is an American subsidiary of a Swedish company.

---

2. Spencer dep. Feb. 16, 2010.

Yet another item of circumstantial evidence is that on June 16, 2009, Sandvik filed a petition for suspension of worker's compensation benefits which alleged that Alpensjo had *voluntarily* removed himself from the work force by relocating to Sweden. Thus making the nature of plaintiff's removal from the work force a central issue in the worker's compensation case.

On September 7, 2010, Worker's Compensation Judge Alan Harris rendered a decision on our plaintiff's worker's compensation claim. That decision, which is attached to plaintiff's motion for partial summary judgment, forms the basis for plaintiff's argument in support of his motion for partial summary judgment. Plaintiff is alleging that Judge Harris' decision should act as collateral estoppel on specifically enunciated findings of fact and conclusions of law per the opinion of Judge Harris.

Sandvik opposes Alpensjo's position and argument. Several admissions in their answer to plaintiff's motion make their position less persuasive. At response number two (2), Sandvik candidly admits that the opinion of Judge Harris dismissed Sandvik's petition to suspend Alpensjo's benefits. They also admit that Alpensjo's E2 work visa, for which their employment qualified Alpensjo, expired on May 21, 2009. Sandvik also admits in their answer to Alpensjo's motion at paragraphs numbered two (2) and three (3) that plaintiff's employment was terminated by Sandvik on March 3, 2009 "for legitimate non-retaliatory reasons."

From a legal standpoint, Sandvik denies that Judge Harris' decision should be deemed to be conclusive or be given preclusive effect. Sandvik claims there was no full and fair opportunity to litigate before Judge Harris and further denies identity of issues both of which would and should preclude the use of the doctrine of collateral estoppel. Sandvik also generally denies plaintiff's characterization of Judge Harris' decision and claims that the decision should speak for itself.

Also specifically, Sandvik denies that Judge Harris' decision "squarely presented and resolved the central factual issue of this case, that being whether Alpensjo received a retaliatory discharge."

Sandvik denies that plaintiff is entitled to partial summary judgment with respect to paragraphs four (4), five (5), seven (7), eight (8), nine (9), ten (10), eleven (11) and twelve (12) of Worker's Compensation Judge Harris' findings of fact because matters discussed in those paragraphs were not actually litigated nor were they essential to judgment or determined by a valid final judgment.

Sandvik admits to the use of discovery in worker's compensation proceedings but denies that the principle of mutuality of estoppel imposing preclusion against Sandvik and in favor Alpensjo should prevail.

To resolve this dispute, we must compare the elements essential to resolving the worker's compensation carrier's

attempt to suspend benefits versus the elements needed to complete Alpensjo's case of retaliatory discharge. If the elements are not sufficiently similar, we need go no further since there would fail to be an identity of issues. If the elements are sufficiently similar, then we must next engage in a collateral estoppel analysis. If the collateral estoppel analysis is successful, then we need to determine whether summary judgment elements have been met.

## COMPARISON OF ELEMENTS

### Worker's Compensation

There seems to be little underlying dispute that Alpensjo sustained a work related injury from his motor vehicle accident in Connecticut in December of 2008. The issue for the petition by Sandvik to suspend Alpensjo's benefits was Alpensjo's failure to appear for the two defense IME's. If Alpensjo was fired by Sandvik for valid cause, then Alpensjo was forced to leave the United States due to his own misconduct. Therefore, his visa expiration would be his own fault and the operative cause for his failure to appear for two worker's compensation IME's.

Conversely, if Alpensjo were discharged and the reasons for termination were retaliatory in nature due to him exercising his statutory right to file a worker's compensation claim, under those circumstances, Alpensjo would have been effectively forced to leave the United States due to Sandvik's improper conduct.

Accordingly, the key issue in the underlying worker's

compensation case is the nature of Alpensjo's termination by Sandvik. Specifically, our inquiry is whether the firing was for valid cause making missing the IME's culpable for Alpensjo or whether it was a retaliatory firing, discharge or termination, which forced Alpensjo to leave the United States due to his visa expiring and thus making missing the IME's excusable.

## Wrongful Discharge and Defamation[3]

In order for Alpensjo to make actionable his wrongful discharge claim before our court, he must be able to show that his receipt or pursuit of worker's compensation benefits must have been a factual cause in Sandvik's motivation to terminate his employment. *Shick v. Shirey*, 552 Pa. 590, 594, 716 A.2d 1231, 1232 (1998). Although Pennsylvania is generally considered an "at-will employment" state, public policy exceptions do exist and a discharge for seeking worker's compensation benefits is such an exception. *Shick, supra* at 1232.

There has been some confusion as to how to assess factual cause in a wrongful termination or wrongful discharge case, and the issue is how to apply causation. Must the retaliatory discharge be motivated by animus as the sole cause, or need the pursuit or receipt of worker's compensation be merely a determinative cause as opposed to a sole cause?

---

3. Defamation claim elements are not at issue under the motion for partial summary judgment.

In *Sheridan v. E.I. DuPont de Nemours and Company*, 100 F.3d 1061 (1996), a gender discrimination case, the United States Court of Appeals for the Third Circuit decided a plaintiff need only show that gender discrimination was a determinative cause and not the sole cause.

In *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 517 (Pa. Super. 2005), our Supreme Court in a worker's compensation benefits case stated,

> "we hold...that a Pennsylvania employer may not seek to have a supervisory employee dissuade a subordinate from seeking worker's compensation benefits. If an employer does so, the supervisory employee shall have a cause of action for wrongful discharge from employment."

Applying these comparisons to our case, it appears that the factual issue in Rothrock, a worker's compensation case, is also at issue in our case. What was the reason and nature for Alpensjo's discharge? Was it a firing for no cause or valid cause or a retaliatory discharge for seeking his statutory entitlement to worker's compensation benefits? Thus, not only is the core issue between the worker's compensation case and our case sufficiently similar, it is virtually identical. We so hold thus, concluding our first level of analysis, that the issues between these two cases are the same.

Collateral Estoppel

In a somewhat similar case involving unemployment benefits, *Rue v. K-Mart Corporation*, 522 Pa. 13, 19-20, 713 A.2d 82, 86 (1998) our Supreme Court concluded that unemployment compensation hearings did not provide a full and fair opportunity to litigate the issues and thus the court denied issue preclusion or collateral estoppel. The Supreme Court's findings were based upon unemployment hearings being too informal, not allowing for discovery nor following the rules of evidence. Thus unemployment compensation law, in terms of the facts determined, was found to be too informal in their proceedings to apply issue preclusions or collateral estoppel.

However, Justice Newman did address in *Rue* two other significant issues herein. First, she did a thorough analysis of the elements needed to apply collateral estoppel. Second, she reiterated that this opinion was limited solely to unemployment compensation cases and that it had no bearing on the body of worker's compensation law to the contrary. *Rue, supra* at 21 n.4, 552 Pa. at 23, 713 A.2d at 87.

Knowing now from *Rue* that worker's compensation proceedings can be used for issue preclusion, we must now do the four part analysis as Justice Newman directs. In *Rue*, Justice Newman set out the four prongs needed to satisfy the application of the doctrine of collateral estoppel or issue preclusion. *Id.* at 17.713 A.2d 84. As for the first prong, the issue decided in a prior action must be identical to the one presented in a later action. In our comparison

of the elements of our worker's compensation claim and the wrongful termination claim we have already made that determination. (See discussion supra pp.9-10).

The second prong is that the prior action resulted in a final judgment on the merits. In the present case, prong two has been met. On September 7, 2010, Worker's Compensation Judge Alan Harris issued a five page opinion with numerous findings of fact and conclusions of law. As part of the basis for his decision, he relied upon a telephone deposition of Alpensjo dated February 15, 2010 which ran two hundred and fifty-eight (258) pages. Additionally, Judge Harris also had Brian Spencer's two hundred and twenty-six (226) page deposition taken on February 16, 2010. Both were made available to our court by plaintiff's counsel. After review of this evidence, the hearing transcripts, and Judge Harris' decision, this court is of the belief that the decision rendered by Worker's Compensation Judge Harris was a final decision since it was never appealed and the time to appeal has expired. Consequently, prong two of the elements for collateral estoppel has been met.

Prong three is not at issue since the parties at the worker's compensation level were Johan Alpensjo, our plaintiff, and Sandvik, Inc. who was at the worker's compensation hearing and Sandvik Materials Technology, Inc. a/k/a/ Sandvik Inc. is our defendant herein. Therefore, prong three is met because the parties at both proceedings are either identical or in privity.

Prong four required that the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior action. Here Sandvik adamantly says such was not the case. As noted above in *Rue*, the body of case law concerning the preclusive effects of worker's compensation proceedings remains good law. *Id.* at 21 n.4, 552 Pa. at 23, 713 A.2d at 87. Further, since worker's compensation proceedings have preclusive effect, we need only analyze whether there was a full and fair *opportunity* to litigate the issue.

As Justice Newman noted in quoting the Restatement of Judgments 2d. at §28, issue preclusion would *not* be appropriate where:

> "A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two [proceedings] or...

> [T]he party sought to be precluded did not have an adequate *opportunity* or incentive to obtain full and fair adjudication in the initial action." (emphasis added).

Our review of the hearing transcripts from the worker's compensation hearings reveals there was fair opportunity to litigate the issue. Both parties were represented by counsel of their choosing. Both parties had the right to examine and cross-examine witnesses. In addition to testimony, both parties had the right to subpoena evidence, engage in discovery and present documentary evidence. Additionally, the formality of a worker's compensation

hearing and the use of rules of evidence was also present.

Our review of the depositions and the hearing transcripts show an absence of the disqualifications which would prohibit the use of the doctrine of collateral estoppel.

Absent the disqualifications, prong number four has been met and all the elements or prongs necessary to implement the doctrine of collateral estoppel or issue preclusion are met.

## Summary Judgment

Our final determination needed to complete our task is to determine whether having decided we have identical factual issues and that the elements or prongs of collateral estoppel or issue preclusion have also been met, whether Alpensjo meets the elements needed to be granted partial summary judgment.

### The General Standards for Summary Judgment

The Pennsylvania Rules of Civil Procedure that govern summary judgment instruct in relevant part that the court shall enter judgment whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Under the rules, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving

party, and all doubts as to existence of a genuine issue of material fact must be resolved against the moving party. Finally, a court may grant summary judgment only where the right to do so is clear and free from doubt. Pa.R.C.P. 1035.2(1); *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 34, 928 A.2d 186, 195 (2007); *Pennsylvania Social Services Union, Local 688 of Service Employees Intern. Union v. Comm.*, ___ A.3d ___, 2012 WL 6217433 (Pa.Ct. Com. Pl. Dec. 14, 2012).

It is a violation of the law to terminate an employee for exercising his statutory rights by applying for and/or obtaining worker's compensation benefits. If such animus was a cause of the employee's termination, then the plaintiff has established a violation of the law. *See Shick* and *Rothrock* and accompanying discussion, *supra* pp. 10, 12.

Such findings were clearly made in the September 7, 2012 decision of Judge Alan Harris. At finding of fact two (2), Judge Harris notes that on March 4, 2010, he granted Sandvik's petition for physical examination of Alpensjo for failing to present himself at the IME scheduled before Dr. Robert Mauthe on July 9, 2009 after Alpensjo had returned to Sweden. Sandvik was then told by Judge Harris to reset Alpensjo's IME in Sweden. According to finding of fact three (3), Sandvik never did as Judge Harris directed.

Finding of fact four (4) articulates, using documentary evidence from Sandvik, Sandvik's repeated efforts at

"repatriation" of Alpensjo from here back to Sweden due to his termination of employment no longer permitting an E2 work visa.

Finding of fact five (5) illustrates the nature of Alpensjo's injuries and how the injuries made his attempts to return to work difficult and unsuccessful, thus making him a viable worker's compensation claimant. Alpensjo was also found to have left the United States under his sincere belief that he feared he would be arrested if he remained in the United States beyond the expiration of his E2 work visa.

At finding of fact seven (7), Judge Harris determined Alpensjo to be credible, forthright with respect to his testimony, and completely unshaken on cross-examination. The judge therefore accepted Alpensjo's testimony as fact in its entirety.

At finding of fact eight (8), Judge Harris noted that he also carefully considered the testimony of Brian Spencer and found Mr. Spencer frequently evasive in his testimony. He found Spencer's allegations that Alpensjo was a problematic employee from the beginning as belied by the fact that Alpensjo was promoted and never told of his shortcomings. He further rejected Spencer's testimony at finding of fact ten (10).

At finding of fact nine (9), Judge Harris concludes:

"Based upon the credible testimony of Claimant

[Alpensjo] this judge finds as a fact that the Claimant did *not* leave the United States voluntarily. This Judge finds that the Claimant left at the expiration of his visa because he was fearful that he would be arrested and deported." (emphasis added).

The judge then concluded with regard to Alpensjo's injuries that he had sustained a work related injury that left him unable to perform his work duties.

At finding of fact ten (10), the judge found the requisite animus present by, once again, rejecting Mr. Spencer's testimony that Alpensjo's termination was a business decision based upon Alpensjo's poor performance. He concluded that the discharge of Alpensjo was Sandvik's attempt to "rid the company of an individual who had become a problem due to his work injury." Judge Harris went on to conclude that following Alpensjo's work related injury, Sandvik, through Spencer, "embarked on a course of conduct that was calculated to remove the claimant from the company and ultimately from the country." He cited Spencer's repeated letters to United States officials stating Spencer's belief that Alpensjo should be "repatriated."

At finding of fact eleven (11), Judge Harris opened his paragraph by stating, "The conduct of the Defendant [Sandvik] in this matter towards the Claimant [Alpensjo] has been, in the opinion of this Judge, *manipulative* and *ruthless*." (emphasis added).

Judge Harris further goes on in finding of fact eleven

(11) to conclude "It appears to this Judge that the purpose of defendant's conduct all along was to force the Claimant to leave the United States and go back to Sweden, where the Defendant believed it would have no further liability to the Claimant."

Based upon all of the above, Judge Harris came to his ultimate finding of fact number twelve (12) wherein he concludes, "This Judge finds as fact that the Claimant did not voluntarily remove himself from the work force by relocating to Sweden."

Plaintiff also sought collateral estoppel relief regarding conclusions of law three (3) and four (4). To the extent that these conclusions incorporate previous findings of fact, this request, though at least particularly redundant, is granted.

For example, the judge has concluded at finding of fact twelve (12) that Alpensjo did not voluntarily remove himself from the work force by relocating to Sweden. This is a restatement of finding of fact nine (9) wherein the same was stated as twelve but with greater supportive details.

As conclusion of law three (3), the judge repeats facts nine (9) and twelve (12), "it has been found as fact that this Claimant did not leave the United States voluntarily. It has been found as fact that be was terminated by the employer due to his work injury and that the employer then saw to it that he would be forced to leave the United States."

To the extent that conclusion of law three (3) restates earlier found facts, it is likewise accepted by the court as plaintiff requests despite the redundancy.

Similarly at conclusion of law four (4) the judge restates findings of fact already noted,

> "This Judge notes that the Claimant could have continued to legally work in the United States if he had been employed. The fact that he is not employed is a product of his discharge by the Defendant which was predicated on his work injury. The Claimant, was a legal resident of the United States with a Work Visa. He lost his Work Visa because he became unemployed due to his work injury."

To that extent, they are likewise accepted per plaintiff's request, though redundant.

### Conclusion

These findings of fact by Judge Harris as noted by this court are both critical and central to the conclusion that Alpensjo did not voluntarily remove himself from the United States work force by relocating to Sweden.

These facts meet the four prongs or the four criteria for collateral estoppel. The issues were the same. The worker's compensation hearings were conducted with sufficient protections and opportunity to be heard by Sandvik. Worker's compensation proceedings can be used for issue preclusion. The decision by Judge Harris is

final. The parties of the worker's compensation case were identical to those herein and finally Sandvik had a full and fair opportunity to litigate at the worker's compensation hearing. (*See Rue*, discussion, supra pp. 10-11).

Accordingly, these factual determinations matter. These facts noted now govern our case. Therefore, plaintiff's request for partial summary judgment based upon these factual determinations on the basis of collateral estoppel is granted and findings of fact four (4), five (5), seven (7), eight (8), nine (9), ten (10), eleven (11) and twelve (12) and conclusions of the law three (3) and four (4) as decided by Judge Harris are deemed conclusively established between these two parties for purposes of our case as noted in this opinion.

An appropriate order follows.

## ORDER

And now, February 15, 2013 plaintiff's request for partial summary judgment based upon the doctrine of collateral estoppel is granted and findings of fact four (4), five (5), seven (7), eight (8), nine (9), ten (10), eleven (11) and twelve (12) and conclusions of the law three (3) and four (4) are deemed conclusively established between these two parties for purposes of our case in this subsequent action in accordance with and for the reasons noted in the opinion.